**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ENDLESS SALES, INC.,                                       Civil Action No.:

     Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

     Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

**COMES NOW** Plaintiff, ENDLESS SALES, INC., by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, and in support of its Complaint, alleges and avers as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's breach of contract, bad faith conduct, and unreasonable delay and denial in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

### PARTIES

2.    Plaintiff, Endless Sales, Inc. ("Plaintiff") is a Colorado Corporation with its principal office in Denver, Colorado.

3.    Defendant, Certain Underwriters at Lloyd's, London ("Defendant" or "Lloyd's), is a foreign insurance company incorporated and domiciled in the state of New York and maintains its principal place of business in a state other than Colorado.

**JURISDICTION AND VENUE**

4.      This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

**FACTS COMMON TO ALL COUNTS**

5.      Plaintiff is the owner of real property located at 4625 Colorado Boulevard, Denver, Colorado 80126 ("Property").

6.      Plaintiff purchased a Commercial Real Estate Premier Policy of insurance from Lloyd's under Policy Number CIG-US-CO-000742-00 (the "Policy").

7.      The Policy provides $2,300,000.00 in Building property damage coverage for Plaintiff's Property.

8.      The Policy provides $90,000.00 in Contents coverage for Plaintiff's Property.

9.      The Policy provides Building Ordinance and Law coverage for Plaintiff's Property.

10.     The Policy was issued with effective dates of October 27, 2016 through October 27, 2017. A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

11.     The Policy is an all risk policy of insurance.

12.     The Policy is a replacement cost value policy and covers loss to Plaintiff's Property.

13.     The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

14.     The Policy does not require that the Property sustain functional damage for coverage to be afforded to covered property at the premises caused by or resulting from any covered cause of loss.

15.     Under the Policy, Lloyd's agreed to adjust all losses with its insured fairly and timely.

16.     Plaintiff paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of them under the Policy.

17.     On or about May 8, 2017, during the Policy period, Plaintiff suffered a loss at the insured Property due to hail and wind.

18.     The damage from the hail and/or wind constituted a covered loss under the Policy.

19.     Plaintiff timely reported the covered loss and damage to Lloyd's, and made a claim for the loss and damage to the Property.

20.     Lloyd's assigned Claim Number 3008785258-1-1 to the Property loss.

21.     Lloyd's assigned its claims representative, Jeffrey Lance, to investigate and adjust Plaintiff's claim for direct physical loss to the Property as a result of the May 8, 2017 hail and wind storm.

22.     Lloyd's retained an estimator, Peter Baggus of Frontier Adjusters of Denver, to investigate and estimate direct physical loss to the Property as a result of the May 8, 2017 hail and wind storm.

23.     On or about May 15, 2017, Lloyd's estimator, Peter Baggus, performed a site inspection of the Property.

24.     While Lloyd's estimator, Peter Baggus, completed a damage estimate on May 21, 2017, the damage estimate was not provided to the Insured until July 12, 2017.

25.     The first damage estimate outlined a mere $25,800.69 in replacement cost value covered damages.

26.     The first damage estimate included a mere twenty-five line items.

27.     In adopting Peter Baggus' first damage estimate, Lloyd's purposefully overlooked the extent of covered damages to its Insured's Property. A copy of Lloyd's First Damage Estimate is attached hereto as **Exhibit "B."**

28.     Despite the presence of direct physical damage throughout the roofing system, Lloyd's first damage estimate failed to provide for repair of the covered hail damage.

29.     Despite the presence of saturation and entrapment of water within the flat roofing system, Lloyd's first damage estimate failed to provide for repair of the covered damage.

30.     Despite saturation of the insulation board of the flat roofing system, preventing coating repair and necessitating full replacement of the flat roofing system, Lloyd's first damage estimate failed to provide for repair of the flat roofing system.

31.     Despite the presence of direct physical damage to the exterior of the building in the form of chipped paint, Lloyd's first damage estimate failed to provide for repair of the covered damage.

32.     Despite the presence of direct physical damage to a window on the left elevation, Lloyd's first damage estimate failed to provide for repair of the covered damage.

33.     Despite the presence of direct physical damage to rear metal door, Lloyd's first damage estimate failed to provide for repair of the covered damage.

34.     Despite the presence of direct physical damage to a skylight in the parts room, Lloyd's first damage estimate failed to provide for repair of the covered damage.

35.     Despite the presence of saturation and entrapment of water within the flat roofing system, Lloyd's first damage estimate failed to provide for repair of the covered damage.

36.     In addition to the direct physical damage outlined in Paragraphs 28-35, Lloyd's first damage estimate failed to provide for repair of covered damages, including, but not limited to:

- Removal and replacement of 7,318 square feet of metal roofing in the amount of $51,414.56
- Removal and replacement of 99.00 linear feet of steel rake/gable trim in the amount of $750.60
- Lead testing fee in the amount of $504.00
- Asbestos testing fee in the amount of $360.00
- Removal and replacement of vinyl faced R11 fiberglass insulation in the warehouse in the amount of $7,627.23
- Painting of 19,097.00 square feet of walls and ceilings in the warehouse in the amount of $11,702.15
- Detachment and resetting of 25.00 fluorescent light fixtures in the show room in the amount of $1,877.40
- Painting of 6,771.14 square feet of ceiling in the show room in the amount of $4,212.32
- Painting of 5,427.22 square feet of walls in the show room in the amount of $3,897.29
- Detaching and resetting of 3.00 breaker panels in the show room in the amount of $2,283.53
- Scraping 6,771.14 square feet of ceiling in the show room in the amount of $3,743.88
- Damages in excess $9,507.00 in the board room
- Damages in excess of $3,500.00 in the women's bathroom
- Damages in excess of $16,000.00 in the break room
- Damages in excess of $4,500.00 in the parts room
- Damages in excess of $5,100.00 in the office
- Damages in excess of $500.00 in Gary's office
- Damages in excess of $1,000.00 in the storage area room
- Damages in excess of $10,750.00 in the paint shop
- Damages in excess of $3,375.00 in the men's bathroom
- Damages in excess of $610.00 to the furnace
- Damages in excess of $27,000.00 to the exterior of the building
- Damages in excess of $20,500.00 related to general conditions

37.     Each of the items outlined in Paragraph 28-36 above were agreed to by Lloyd's some two months later in December 2017.

38.     Moreover, Lloyd's first damage estimate improperly excluded general contractor overhead and profit for demolition, roofing, and repair of its Insured's windows.

39.     Lloyd's failure to provide general contractor overhead and profit for demolition, roofing, and repair of its Insured's windows within its first damage estimate has resulted in the delay of covered benefits to Plaintiff without a reasonable basis.

40.     On or about July 12, 2017, Plaintiff retained Claims Adjusters Group ("CAG"), a Colorado state licensed public adjusting firm, to assist in the adjustment of Plaintiff's claim for direct physical loss to the Property as a result of the May 8, 2017 hail and wind storm.

41.     On or about July 19, 2017, Lloyd's representative, Peter Baggus, and CAG performed a site inspection of the Property.

42.     On or about July 19, 2017, Lloyd's representative, Peter Baggus, advised CAG that Lloyd's would have its reinspection report and revised estimate completed by July 21, 2017.

43.     On or about July 24, 2017, CAG requested Lloyd's provide its finalized reinspection report and revised estimate related to the July 19, 2017 joint inspection.

44.     On or about July 27, 2017, CAG, for a second time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the July 19, 2017 joint inspection.

45.     On or about July 31, 2017, CAG, for a third time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the July 19, 2017 joint inspection.

46.     On or about July 31, 2017, CAG provided Lloyd's with a copy of Plaintiff's contents list which outlined $25,483.65 in replacement cost value covered contents damages. A copy of Plaintiff's Contents List is attached hereto as **Exhibit "C."**

47.     On or about August 7, 2017, CAG provided Lloyd's with additional documentation supporting Plaintiff's unpaid damaged contents.

48.     On or about August 8, 2017, CAG, for a fourth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the July 19, 2017 joint inspection.

49.     On or about August 9, 2017, Lloyd's representative, Peter Baggus, advises CAG that its finalized reinspection report and revised estimate should be completed on the afternoon of August 9, 2017.

50.     On or about August 15, 2017, CAG, for a fifth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the July 19, 2017 joint inspection.

51.     On or about August 22, 2017, Plaintiff provided Lloyd's with its damage estimate which outlined $470,877.63 in replacement cost value covered damages. A copy of Plaintiff's Damage Estimate is attached hereto as **Exhibit "D."**

52.     On or about August 29, 2017, CAG, for a sixth time, requested Lloyd's provide its reinspection report and revised estimate related to the July 19, 2017 joint inspection.

53.     On or about September 21, 2017, CAG, for a seventh time, requested Lloyd's provide its reinspection report and revised estimate related to the July 19, 2017 joint inspection.

54.     On or about September 21, 2107, Plaintiff provided Lloyd's with its executed Proof of Loss in the amount of $470,877.63.

55.     On or about September 21, 2017, over two months after its July 19, 2017 reinspection, Lloyd's provided Plaintiff with its second damages estimate which outlined $211,033.88 in replacement cost value covered damages. A copy of Lloyd's Second Damage Estimate is attached hereto as **Exhibit "E."**

56.     Lloyd's second damage estimate included an additional $185,233.19 in covered damages that were not provided in Lloyd's first damage estimate.

57.     Lloyd's failure to include the damages outlined in Paragraph 28-36 within its first damage estimate resulted in the delay of $185,233.19 in covered benefits without a reasonable basis.

58.     Moreover, Lloyd's second damage estimate improperly excluded general contractor overhead and profit for demolition, roofing, and repair of its Insured's windows.

59.     Lloyd's failure to provide general contractor overhead and profit for demolition, roofing, and repair of its Insured's windows within its second damage estimate has resulted in the delay of covered benefits to Plaintiff without a reasonable basis.

60.     Despite the presence of saturation and entrapment of water within the flat roofing system, Lloyd's second damage estimate failed to provide for repair of the covered damage.

61.     On or about September 27, 2017, Lloyd's rejected Plaintiff's Proof of Loss.

62.     On or about October 17, 2017, nearly thirty days after providing Plaintiff with its second damage estimate, Lloyd's issued payment in the amount of $197,775.29 related to its second damage estimate.

63.     On or about November 28, 2017, CAG again advised Lloyd's that the saturation of the insulation board of the flat roofing system prevents coating repair and necessities full replacement of the roofing system.

64.     On or about November 28, 2017, CAG again requests full replacement of the flat roofing system as outlined in its August 22, 2017 estimate and discussed during the July 19, 2017 joint inspection of the Property.

65.     On or about November 29, 2017, Lloyd's representative, Peter Baggus, and CAG perform a reinspection of the flat roofing system.

66.     On or about November 29, 2017, Lloyd's representative, Peter Baggus, advises CAG that there is water trapped within the insulation of the flat roofing system.

67.     On or about December 1, 2017, CAG, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

68.     On or about December 11, 2017, CAG, for a second time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

69.     On or about December 13, 2017, CAG, for a third time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

70.     On or about December 22, 2017, CAG, for a fourth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

71.     On or about January 2, 2018, CAG, for a fifth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

72.     On or about January 8, 2018, CAG, for a sixth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

73.     On or about January 15, 2018, CAG, for a seventh time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

74.     On or about January 18, 2018, CAG, for an eighth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

75.   On or about January 20, 2018, CAG, for a ninth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

76.   On or about January 29, 2018, CAG, for a tenth time, requested Lloyd's provide its finalized reinspection report and revised estimate related to the November 29, 2017 joint inspection.

77.   On or about February 5, 2018, over two months after its second reinspection, Lloyd's provided Plaintiff with its third damages estimate. A copy of Lloyd's Third Damage Estimate is attached hereto as **Exhibit "F."**

78.   Lloyd's third damage estimate outlined $245,452.22 in replacement cost value covered damages to Plaintiff's flat roofing system.

79.   Lloyd's third damage estimate included an additional $177,093.78 in covered damages that were not provided in Lloyd's first or second damage estimates.

80.   Lloyd's failure to previously include the additional damages outlined in in its third damage estimate resulted in the delay of $177,093.78 in covered benefits without a reasonable basis.

81.   On or about March 1, 2018, CAG provided Lloyd's with additional documentation supporting Plaintiff's unpaid claim for damaged contents.

82.   On or about March 8, 2018, over thirty days after submission of its third revised estimate, Defendant issued a second actual cash value payment in the amount of $172,515.07.

83.   Despite receipt of documentation supporting Plaintiff's claim for contents damage, to date, Lloyd's refuses to indemnify its insured for contents damages resulting from a hail storm occurring on May 8, 2017.

84.     Lloyd's failure to indemnify its insured for contents damages has resulted in the delay and denial of $25,483.65 in covered benefits without a reasonable basis.

85.     Plaintiff has fulfilled all duties required of them under the Policy after discovery of the loss.

86.     Plaintiff has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Defendant.

## FIRST CLAIM FOR RELIEF
### (Breach of Insurance Contract)

87.     Plaintiff realleges and reaffirms Paragraphs 1-86 as if fully set forth herein.

88.     Plaintiff purchased an all risk policy requiring Lloyd's to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

89.     The Policy between Plaintiff and Lloyd's is a binding contract.

90.     Plaintiff paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Lloyd's.

91.     Lloyd's has denied certain covered damages and continues to delay and deny certain claimed damages.

92.     Lloyd's failure to honor its obligations under the Policy is a breach of contract.

93.     Lloyd's breach of contract has damaged, and continues to damage Plaintiff.

94.     Plaintiff is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, ENDLESS SALES, INC., respectfully requests this Court enter judgment against, Defendant, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

95.     Plaintiff realleges and reaffirms Paragraphs 1-94 as if fully set forth herein.

96.     Under the Policy and Colorado law, Lloyd's owes its insured the duty of good faith and fair dealing.

97.     An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

98.     Lloyd's sold Plaintiff the Policy at issue, the intent of which was to provide coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

99.     Lloyd's knew that Plaintiff purchased the Policy to protect its Property in the event of a loss.

100.    Lloyd's owed Plaintiff the non-delegable duty to investigate its claim objectively and not look for ways to deny benefits or attempt to not pay the full amount owed.

101.    Lloyd's owed Plaintiff the duty to give equal consideration to the financial interests of Plaintiff, and not give greater consideration to its own financial interests while investigation and adjusting Plaintiff's claim.

102.    Lloyd's failed to interpret its insurance policy reasonably.

103.    Lloyd's failed to resolve doubts concerning insurance coverage in favor of the policyholder.

104.    Lloyd's failed to evaluate the reports received from its consultants to determine whether the consultant had conducted the necessary investigation of the claim.

105.    Lloyd's failed to conduct a thorough and timely investigation of Plaintiff's claim in accordance with insurance industry claims handling standards and practices.

106.   Lloyd's knew that its decision to underpay benefits owed to Plaintiff was intentional and not accidental.

107.   Lloyd's failed to treat Plaintiff's interests with equal regard to its own.

108.   Lloyd's mischaracterized the facts and coverage to the benefit of itself.

109.   Lloyd's failed to conduct a full, fair, and prompt investigation of Plaintiff's claim.

110.   Lloyd's failed to objectively evaluate Plaintiff's claim based on all available evidence, and not just evidence which Lloyd's believed supported its position.

111.   Lloyd's improperly denied Plaintiff's claim by failing to examine and question its retained consultant's reports to assure that they contained all opinions necessary to properly evaluate the claim.

112.   Lloyd's improperly denied Plaintiff's claim by failing to examine and question its retained consultant's reports to assure that they were based on all relevant and available evidence.

113.   Lloyd's representatives, including Jeffrey Lance, received income-based compensation to quickly close Plaintiff's claim for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

114.   Lloyd's representatives, including Jeffrey Lance, received income-based compensation to reduce claims payments made to Plaintiff on its claim for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

115.   Lloyd's improperly set claims handling goals to reduce the amount paid on claims, including Plaintiff's claim for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

116.   Lloyd's improperly delayed Plaintiff's claim to reduce overall claims payments.

117.   Lloyd's improperly delayed Plaintiff's claim to increase profits.

118.   Lloyd's improperly delayed Plaintiff's claim to maintain its loss ratio.

119.   Lloyd's improperly delayed Plaintiff's claim to meet department goals.

120.   Lloyd's improperly delayed Plaintiff's claim by providing financial incentives to its personnel, including Jeffrey Lance, to influence claims handling.

121.   Lloyd's improperly delayed Plaintiff's claim to reduce the average amount paid on overall claims.

122.   Lloyd's conduct in the handling of Plaintiff's claim demonstrates that Lloyd's was focused on benefiting itself to the detriment of Plaintiff.

123.   Lloyd's has committed unfair settlement practices, including, but not limited to:

    (a)   Lloyd's has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

    (b)   Lloyd's has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    (c)   Lloyd's refused to pay claims without conducting a reasonable investigation based upon all available information;

    (d)   Lloyd's has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

    (e)   Lloyd's has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

    (f)   Lloyd's has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

    (g)   Lloyd's encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

124.   As a direct and proximate result of Lloyd's action, Plaintiff has:

    (a)   Incurred increased costs to repair, restore and/or replace the significant property damage that was caused by direct physical loss or damaged resulting from the May 8, 2017 hail and wind storm;

    (b)   Suffered damages as a proximate result of the misconduct alleged; and

    (c)   Suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory gees, and other losses.

**WHEREFORE**, Plaintiff, ENDLESS SALES, INC., respectfully requests this Court enter judgment against Defendant, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits
Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

125.    Plaintiff re-alleges and reaffirms Paragraphs 1-124 as though fully set forth herein.

126.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

127.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

128.    Plaintiff is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

129.    Plaintiff suffered a loss covered by the Policy and submitted a claim for that loss to Lloyd's.

130.    The claimed loss and damage submitted by Plaintiff was covered by the Policy and Plaintiff was owed covered benefits under the Policy.

131.    Lloyd's delayed payment of covered benefits without a reasonable basis for its actions.

132.    Lloyd's denied payment of covered benefits without a reasonable basis for its actions.

133.    Lloyd's has unreasonably delayed covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Plaintiff's Complaint.

134.    Lloyd's delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

135.    Lloyd's delayed and denied payment of covered benefits without a reasonable basis for its action by providing a first damage estimate without having documented a reasonable investigation based upon all information.

136.    Lloyd's delayed and denied payment of covered benefits without a reasonable basis for its action by providing a first damage estimate which did not include all covered damages.

137.    Lloyd's delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Plaintiff to retain its own professionals to help properly adjust the covered loss.

138.    Despite receipt of Plaintiff's comprehensive estimate, Lloyd's delayed and denied payment of covered benefits without a reasonable basis for doing so.

139.    Lloyd's unreasonably delayed and denied Plaintiff's claim to reduce overall claims payments.

140.    Lloyd's unreasonably delayed and denied Plaintiff's claim to increase profits.

141.    Lloyd's unreasonably delayed and denied Plaintiff's claim to maintain its loss ratio.

142.    Lloyd's unreasonably delayed and denied Plaintiff's claim to meet department goals.

143.    Lloyd's unreasonably delayed and denied Plaintiff's claim by providing financial incentives to its personnel, including Jeffrey Lance, to determine claims handling.

144.    Lloyd's unreasonably delayed and denied Plaintiff's claim by motivating its claims department to pay less on claims, such as Plaintiff's, than what is otherwise owed.

145.    Lloyd's unreasonably delayed and denied Plaintiff's claim to reduce the average amount paid on overall claims.

146.    Lloyd's unreasonably delayed and denied Plaintiff's claim by asserting coverage positions that it knew were without merit.

147.    The actions of Lloyd's were intended to dissuade Plaintiff in pursuing benefits due and owing under the terms of the Policy.

148.    Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, ENDLESS SALES, INC., respectfully requests this Court enter judgment against Defendant, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

149.    Plaintiff requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 13th day of March, 2018

/s/ Jonathan Bukowski
Larry E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com